Will the clerk please call the next case. 4-16-037-4, City of Springfield v. Workers' Compensation Comm'n. Counsel, you may proceed. Thank you, Your Honor. May it please the Court. Counsel, Bob Mueller on behalf of the City of Springfield. The Commission decision in this case was not against the manifest way to the evidence. An opposite conclusion was not clearly apparent. The circuit judge was wrong. He should be reversed and the Commission decision reinstated. The judge obviously reweighed the evidence here. But he is not the trier of fact, as you well know. He may be the trier of fact routinely in his job, but that is not what he does in this particular case, of course. He said in his opinion, the issue is whether the injury to the claimant's arms arose out of him in the course of his employment. And that said that employment must be a causative factor. But that's not the issue in front of Judge Otwell. The issue in front of Judge Otwell is manifest way to the evidence. Was the Commission decision against the manifest way to the evidence? Which, as I said, it was not. The judge also indicated in his decision that the medical opinions of Dr. Watson and Dr. Trudeau were entitled to much greater weight than the opinion of Dr. Lewis. Again... But that's not really, we can agree that's not what the circuit court is supposed to do, right? They don't reweigh the evidence, right? Is that your point? Of course it's my point. But not only shouldn't he do it, but he did do what he said in his decision he shouldn't do. That's my point. And the point is, he says that as much. He gives greater weight to certain doctors than others. That's reweighing the evidence. We know the law is well settled. It is the Commission's sole province to weigh the credibility and weight of the evidence, including medical evidence. And you're saying basically, as you like to use the phrase, the circuit court substituted its judgment for that of the Commission. He did. That's your argument. Simple enough. Straightforward enough. Right. Okay. Isn't that it? It could be. I'm not trying to lead you into a trap. If you're telling me that you're going to... I'm not telling you to do that. And that's why I'm not going to quit. You're going to give us examples of where that was done. That's exactly what I'm going to do. Thank you very much. Very good. The point here is... From your perspective. Right. Not mine, yours. The point here is that the Commission relied, at least in part, on Dr. Lewis. Dr. Lewis is a board-certified orthopedic surgeon. He did examine and evaluate this guy. And he said, in his testimony, he gave Mr. Leeka ample opportunity to describe what he did. He indicated that his understanding was that what he was told by Mr. Leeka was a description of his main job. And that was having to do with the electric meters, which Mr. Leeka testified to at arbitration. Dr. Lewis indicated he tried hard to ascertain the amount of force and repetition that Mr. Leeka was doing in this job. He told, meaning he being Mr. Leeka, told Dr. Lewis more about his job changing meters, the job that he was doing in the last two or three years, almost exclusively, than he ever told Dr. Watson. Well, let me ask you this. In fairness to the other side, though, I mean, could we characterize this as there was conflicting medical evidence, though, was there not? Right. And the commission went through all that evidence in their decision and made the determination what evidence they thought was most important and entitled to more weight and reached their decision based upon their evaluation of the conflicting evidence. And I think I said in my brief, there's always conflicting evidence in these cases, or almost always, I hate to be 100%, and that's what the commission does. They're the trier of fact. And that's what they did in this case. Dr. Lewis' opinion, obviously, was that the job activities were not sufficient to cause repetitive trauma injury in this case. One other thing I really... What was wrong with the claimant's testimony? The claimant obviously testified regarding his job duties. What was wrong with that? Was there some inherent problem with his testimony? Well, I think there was. Here's what I was about to say. What we have here and what the commission talked about was a discrepancy between what the guy really did and what he tried to make everybody believe he did. My words. He told, on his accident report, he said his job activities as a lineman caused his problems. He told Dr. Watson he was a lineman. Dr. Watson was given a job description of a lineman to look at in terms of providing a causal connection opinion and a job description of a lineman was introduced at hearing. This guy testified that he was in the traffic and meter department for his entire career, which was over 20 years, with the city of Springfield. He was not a lineman. He may have been trained as a lineman, but his job was traffic and meter repairman. If you look at the job descriptions of those two, they're totally different. In the traffic and meter repairman, 50% of the time he's installing and replacing meters. Does a lineman ever do that? No. You're saying that's relevant to whether he had bilateral carpal tunnel and bilateral cubal tunnel? What I'm saying is Dr. Lewis' opinion, I think, is actually entitled to greater weight than Dr. Watson's because he knew what the guy was doing. Dr. Watson talks about him being a lineman. He's treated linemen over the last 20 years for the city of Springfield. That's not what this guy did. His job description, as I said, traffic and meter repairman is not the same. But what difference does that make in terms of whether or not he had these occupational diseases? I'm saying it's a basis for the opinion of Dr. Lewis. In terms of physicality, in terms of what he does every day, is that what you're really sort of dancing around? Again, the circuit court, who I think was absolutely wrong, indicated that Dr. Watson's opinion is entitled to more weight than Dr. Lewis. First of all, he's reweighing the evidence. Second of all, I don't think it's true. And that's why I'm pointing this out. The other thing is, though, that the commission indicated that this guy, they felt, lacked candor with regard to his job activities. And that's part of it, what I just said about the difference between a lineman and a traffic and meter repairman. Well, what are those differences in what he was actually doing as opposed to what the lineman did? Your Honor, he indicated in his testimony the last two or three years, all, not all, again, virtually all he did was changing out meters because the city was going from having people come to read your meter at your house to having a remote read. So they had to change out all the meters. So he's going around, and obviously, it's not a huge town, but there are enough people. He's been doing it the last two or three years. That's not to say he did that all the time. He said it got interrupted, for instance, when somebody would crash into a traffic light. That's important. Traffic flow is important. You don't want people running into each other, so they send somebody right away. It might be that he gets called to do that some days. Some days, somebody else may be, but the point is, he doesn't do the replacing meters all the time because there may be emergencies that he has to go do. But his testimony was that he does that virtually all the time. The job description said he does that 50% of the time, which is probably true generally, but in his testimony, it's more than that in the last two or three years. And that's obviously alignment doesn't mean that. And that's the big difference in my opinion. Wrapping up, I'd like the judge's decision to be reversed, the commission's decision to be reinstated, because the commission's decision was not against the manifest way of the evidence. Thank you very much. Thank you, counsel. We'll have time to reply. Counsel, you may respond. May I please report, counsel? My name is Stephanie Shea Williams, and I represent the petitioner appellee in this matter, Kelly Lika. While the burden of proof is the manifest way of the evidence, it is important to note that the court today has a role in reviewing the record and the evidence presented at the arbitration hearing. I think it's important to note that this was not a unanimous decision at the commission level. In fact, one commissioner dissented, stating and opining that the arbitrator's decision should be upheld. So not all three commissioners thought that this should be, that the arbitrator's decision should be overturned. Let me ask you a question related to his point, which touches on some well-settled principles, as you well know. Did the circuit court specifically indicate why it reversed the commission's decision? Your Honor, it points to four points which it thought the commission found was against the manifest way of the evidence. The first was that the evidence that Lika's, or it said that the evidence is relatively insignificant that Mr. Lika was off work and on limited duty for a period approximately one year before the manifest date of accident. He said that the evidence is relatively insignificant given Lika's long work history and the fact that he returned to work to his regular duties approximately one year before the onset of severe symptoms and the subsequent diagnosis of Dr. Trudeau. Mr. Lika has worked as a City of Springfield employee for approximately 22 years before the date of injury. He has worked in either medium duty or hard duty work. Let me ask you what I was going to ask you. Did the circuit court judge talk about the opinions of Dr. Trudeau and Dr. Watson, the claimants treating physicians? Did the circuit court conclude that those were entitled to greater wage or more wage than the opinion of Dr. Lewis? Did he comment at all on the credibility of the doctor's opinions? It stated that given the paragraph 14 of the decision said given the lack of evidence contrary to Lika's testimony about the nature and extent of his actual job duties, it is clear that the opinions of Dr. Trudeau and Dr. Watson are entitled to much greater weight than the relatively uninformed opinion of Dr. Lewis. Doesn't that imply that he's sort of re-weighing the testimony of the witnesses? I don't believe that he's re-weighing the testimony of the witnesses. I think that the evidence that, in reviewing the evidence and the record, he has found that the commission's decision is simply against the manifest weight of the evidence. Well, I mean, you have to acknowledge that the trial court is re-weighing the evidence, and I'm not saying that that shouldn't be done, because in order to determine if a decision is against the manifest weight, the court of review, whether it's the circuit court or the appellate court, has to re-weigh the evidence to determine if the back finder's determination, whether or not it's clearly against the manifest weight of the evidence. Whether the opposite result is clearly apparent. So there is a re-weighing that's done, but we don't re-weigh the evidence using the preponderance standard. We re-weigh the evidence to determine if the opposite conclusion is clearly apparent. Here, it doesn't appear that the circuit court re-weighed the evidence with the proper standard in mind. It seemed to look at it as if it was the original fact finder in making these factual determinations or commenting on the state of the evidence. So, you know, there's a continuum here, admittedly, where the court of review is operating within to the point where a finding is made that the opposite conclusion is clearly apparent, but it doesn't seem that it's anywhere close to that here in the circuit court's written decision. It seems that it took a fresh look at the case and made the determination as if it was the original fact finder. Respectfully, I think that what the, my interpretation, and it's not mine too, that ultimately matters, but I think that what the judge was doing was weighing, was looking at the commission's decision as to whether it's against the manifest weight of the evidence instead of looking at the evidence with fresh eyes. And I think that the points that he makes as far as the evidence supports that the commission's finding as far as weighing Dr. Lewis's opinions over Dr. Watson's are against the manifest weight of the evidence for several reasons, if you would like me to go into that. The reasons that are set forth in the circuit court's decision. Well, yes. For instance, the... And before you proceed, was there a transcript of the hearing where the circuit court made additional findings? A transcript of our oral arguments? Of the hearing, yes. Did the circuit court make any comments at the hearing or are all of the findings contained within the written decision? I don't believe so. I know everything gets recorded, but as to whether, and this was a long time ago, but as to, I don't believe that the judge made any comments at that point in time. If I'm wrong, it's not... In any event, you're not aware of a transcript of the comments, right? I don't believe so, no. Anyway, going back, as far as the... And I think what's important here is, and this all falls into the candor of the petitioner, and this goes as far as his job duties and his job roles. What is important here is that the petitioner testified... First off, there's no evidence to support that the petitioner was anything but forthcoming. And in fact, the arbitrator noted that he was a forthcoming and credible witness. I think that there's a lot lost between being present at the actual arbitration hearing and reading a cold transcript. But for the reasons why the commission stated that the petitioner lacked candor is just not supported by the evidence. First and foremost, I want to address the precedent case law, the City of Springfield versus the Illinois Workers' Compensation Commission, which is a fourth appellate court decision, which has eerily similar fact patterns as to where we are here. Both were City of Springfield employees who had been employed for 20-plus years. In the City of Springfield case, the CWLP employee was an electrician, and the court found that his bilateral carpal and cupital tunnel were causally related to his work injury. While I understand that this court is not bound by that decision, I think that there should be deference applied to the fourth appellate court's previous decision. Let me see if I can clarify what the point of the case was. As I understand the City of Springfield, in that case, the employer, your opponents, would have been in his position. Your opponent's medical expert gave no opinion on causation, thereby rendering the opinion of the claimant's expert essentially unrebutted. But in this case, your opponent himself has agreed there's conflicting medical evidence on that issue. So how does that carry the day here? Well, I think it carries the day because I think that the manifest weight of the evidence shows is that the commission should have or was incorrect in assigning greater weight to Dr. Lewis's opinions because his opinions were based on incorrect evidence. That's a good argument. But when you're citing Springfield, it's an opposite here. In other words, it's distinguishable because in Springfield, there was no contrary medical evidence. Here, there was. Well, while there was no contrary evidence in Springfield, I mean, Dr. Lewis's opinions, they're based on incorrect information. But it was contrary. That's right. You're arguing the foundation, but there's a difference. There was contrary medical testimony. I understand that there's contrary medical testimony here. However, what I'm saying is that there might as well not be any medical evidence here because Dr. Lewis's opinions are based upon nonexistent facts and evidence that just simply is incorrect. In that case, didn't this court affirm the commission's determination? Yes. Isn't that simply a recognition of the deference that the court of review is to give the fact finder? When the decision is not against the manifest way of the evidence, but here I'm arguing that it is. But really, we're not in the same posture with this case as that case presented. I agree with you. There, they did simply affirm saying that it was not. So I do want to concede that point. All right. You started to get on to something. Obviously, there's a conflict. There is conflicting medical testimony. So it sounds like you're arguing that Lewis's testimony is flawed. There's some foundational flaw. Tell us why his testimony is flawed. Thank you, Your Honor. His testimony is flawed because he severely undervalued what the petitioner did on a daily basis. His opinions were essentially that the petitioner drove around in a truck for hours on end and would once every four to six hours use a tool and would occasionally change out a meter. Additionally, his opinion as to what constituted a repetitive action or repetitive job duty is not supported by Illinois case law. Dr. Lewis stated that he would only label a job duty and activity as repetitive if it was repeated in 30-second cycles. As we know, the case law says, specifically in my brief, I pointed to Edward Hines' Precision Components v. Industrial Commission, but also the city of Springfield says that there's no legal requirement as to what a certain percentage of time must be spent on a task for the duties to meet the legal definition of repetitive. And the city of Springfield says while a claimant's duties may not have been repetitive in the sense that the same thing was done over and over again as on an assembly line, the court finds that the duties required an intensive use of hands and arms and the injuries were certainly cumulative. So first off, his opinions are based on an opinion that contradicts Illinois case law as to a repetitive trauma. Secondly, his opinions as to what the petitioner actually does isn't supported by any evidence whatsoever. I understand that there is a difference in opinion as to a lineman, whether there's a lineman job description versus a repairman job description. It was the petitioner's testimony that he, while he worked in the meter and trafficking department, worked as a lineman. But Dr. Lewis's testimony doesn't fit either of those job descriptions. If you look at, I believe it was Respondents Exhibit 2 in the original transcript, arbitration transcript, it listed the traffic and metering repairman job description. It was a lot more intensive than what Dr. Lewis thought. And in fact, so I think that his decisions are just simply based on inaccurate facts. And Dr. Watson's opinions were based with or without the job description of the lineman position. And additionally, I would like to point out the fact that at no point in time was there ever any evidence that was presented by the respondent that conflicted the petitioner's testimony that he worked in a job duty that fell under the lineman, I guess, umbrella or purview in the meter and trafficking department. So the commission essentially chose to adopt the decisions of a Section 12 physician who met with the petitioner for 45 minutes or less. That was flawed in that you're saying that based on the actual job duties of the claimant. Exactly. And I just, again, as far as whether there was candor or not, there was a lot of time going through, I think, 33 exhibits as far as what the petitioner did. I mean, the commission just basically set all of that aside. They said, well, we don't believe you. There's no testimony or no evidence to rebut that. But we're just going to ignore the 33 exhibits where you talk about how you use this tool, how much you use this tool, how long you use this tool. We're going to cast aside your testimony as far as, you know, the lineman versus job description. Thank you. And lastly, I would just like to point out the fact that as far as the meter and trafficking, it is stated in the record that that was simply for contractual purposes as far as wages. Therefore, I think that the decision is against the manifest rate of the evidence. Thank you. Thank you, counsel. Counsel, you may reply. I don't know if I need to say anything about the other city of Springfield case, but I've probably been said enough. The guy was an electrician. This guy wasn't an electrician, Mr. Lika. I mean, there are differences that, in addition to what's already been stated, that stand out that they aren't the same case. With regard to Dr. Watson, his testimony is he knows what a lineman does. He's been treating, for over 20 years, city of Springfield linemen. That's the point, that he didn't know what this guy does on a regular basis. And what this guy told Dr. Lewis was about doing the meters. That's exactly what he told him, about changing out the meters. As I said before, Dr. Lewis had a better idea than Dr. Watson as to what this guy had been doing the last two or three years, when his symptoms apparently arose. This guy gave Dr. Lewis all the information that Dr. Lewis used, not everything, but historically, in terms of what he did on a regular basis. And it matches up with at least part of his testimony, Mr. Lika's testimony, and to the job description. With regard to those 33 exhibits that were mentioned, what the commission indicated was they're not indicative of what this guy does on a regular basis, or what his typical job duties are. And that's because, again, he's been doing meter changing for the last two or three years, because of this plan in place and in process by the city of Springfield to change them all out, so they can read them remotely. Again, I think the judge was wrong. He reweighed the evidence, put in his own decision regarding that evidence, as opposed to looking at it in terms of manifest weight. The commission decision was not against the manifest weight. I would ask that that decision of the commission be reinstated here. Thank you very much.